IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| WILLIE LOUIS MACK, | ) |
| Petitioner, | ) |
| v. | ) 1:06-cv-01179-UWC-JEO |
| WARDEN D.B. DREW, | ) |
| Respondent. | ) |

**MEMORANDUM OPINION**

This is a petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2241. The petitioner, Willie Louis Mack, a federal inmate incarcerated at the Federal Correctional Institution in Talladega, Alabama, initiated the action by filing a complaint in this court on June 15, 2006. (Doc. 1).

In his petition, Mack challenges his April 6, 2005, prison disciplinary conviction, for which he lost 40 days of good conduct time, 365 days of commissary privileges, 365 days of visiting privileges, 365 days of telephone privileges, and received a 365 day visiting restriction, and a sentence of 60 days in disciplinary segregation. In support of his petition, Mack claims that he was denied due process when: 1) a urine sample was inappropriately taken; 2) the Discipline Hearing Officer ("DHO") did not allow him to interview or call witnesses during his DHO hearing; 3) he was not provided supporting documentation and evidence prior to the hearing; and 4) his Administrative Appeal was unfairly denied.

In response to the court's order to show cause, the respondent has filed an answer in which he argues that the petition lacks merit and is due to be denied. By order of the court, the

parties were advised that the respondent's answer would be treated as a motion for summary judgment. The petitioner was advised that he must comply with Rule 56 of the *Federal Rules of Civil Procedure* in responding to the motion for summary judgment. In response, Mack has filed a traverse.

The evidence reveals that on March 19, 2005, Mack provided a urine sample to prison staff in accordance with urine surveillance procedures. On March 24, 2005, lab results revealed that Mack's sample tested positive for Cannabinoids THC Metabolite. (Doc. 7 at Ex. 3). The FCI Clinical Director verified that the petitioner was not given any medications that would present a positive test result to Cannabinoids THC Metabolite. (Doc. 7 at Ex. 4). Based upon the test results, the petitioner received an Incident Report for "Use of any narcotics not prescribed for the individual By Medical Staff." (Doc. 7 at Ex. 5). On the report, the petitioner commented that "I feel like I was set up. A guy come [sic] to my cell and offered me a black and mild and we smoked it together. This was a guy I don't normally hang with and the next morning I was called for a UA." (*Id*.). Based upon the written report and the toxicology lab report, the petitioner was referred to the Discipline Hearing Officer ("DHO") for a hearing. The petitioner was given an "Inmate Rights at Disciplinary Hearing" form, in which he was advised of his right to call witnesses and of his right to have a staff member present with him at the hearing. The petitioner requested that staff representative John Bruce be with him at the hearing but he did not request any witnesses. (Doc. 7 at Ex. 6).

The petitioner's DHO hearing was conducted on April 6, 2005. The staff representative appeared on the petitioner's behalf and stated that he was "blown away when he heard inmate Mack received an incident regarding use of drugs. . . he has never had a problem with inmate

Mack . . . [who] is an orderly in the unit and was one of the best workers." (Doc. 7 at Ex. 9, p. 1).  The DHO found that:

> [The petitioner] committed the prohibited act of Code 112, Use of Narcotics . . . based on the written statement of E. Banker, Correctional Officer, that on March 24, 2005, at approximately 12:10 p.m., written confirmation was received from National Toxicology Laboratories indicating sample #B01325343, tested positive for use of Cannabinoids - THC Metabolite.
>
> The DHO relied upon as evidence the memorandum . . . [which said] you were not prescribed any medication which would cause a positive test result for Cannabinoids - THC Metabolite.
>
> The DHO also relied upon as evidence, the Chain of Custody for Drug Analysis form.  According to the form you provided a urine sample (Specimen number B01325343) on March 19, 2005, at 9:20 a.m.  According to the Chain of Custody form, Mr. Adamson collected the specimen, and you signed the form indicating specimen number B01325343, belonged to you.
>
> Furthermore, the DHO relied upon as evidence the Laboratory Report stating specimen B01325343, which was collected on March 19, 2005, tested positive for Cannabinoids - THC Metabolite.
>
> You denied the charge and stated you did not smoke marijuana.  You said you smoked Kool cigarettes and that you would sometime smoke Black and Mild cigars.  You said it would be stupid of you to smoke marijuana and you were trying to go home.  When asked if you knew that Black and Mild cigars are often laced with marijuana, you said you did not.  You said you smoked a Black and Mild one night and had to provide a urine specimen the next day.
>
> Based on the greater weight of the evidence, which is the written statement of the reporting officer, and the supporting documentation, the DHO finds you committed the prohibited act of Code 112, Use of Any Narcotics not Prescribed by Medical Staff.  The finding is based on some facts which is [sic] the written statement of the reporting officer which states you tested positive for Cannabinoids - THC Metabolite.  Additionally, the supporting documentation corroborates the written statement of Mr. Banker.  You denied the charge and stated you did not smoke any marijuana.  You did, however, admit to smoking a Black and Mild cigar.
>
> The DHO considered your statement, but found the statement of the reporting officer, coupled with the supporting documentation, to be more credible.  Specifically, Mr. Banker states you tested positive for use of Cannabinoids - THC

> Metabolite.  Furthermore, the Toxicology Laboratory test results for urine specimen #B01325343, documents that this specimen (B01325343) tested positive for Cannabinoids - THC Metabolite. [sic]  Also, the Chain of Custody form verifies that specimen B01325343 was provided by you on March 19, 2005, at 9:20 a.m.  Additionally, the memorandum provided by the medical department states you had not been administered any medication that would cause a positive test result for Cannabinoids - THC Metabolite.  You said you did not smoke any marijuana, but admitted to smoking a Black and Mild cigar.  Black and Mild cigars are known to be laced with marijuana, when a person is trying to conceal the presence of marijuana.  Additionally, you provided no evidence that you did not smoke any marijuana.  Furthermore, Mr. Banker has no reason to lie about the incident.
>
> The DHO believes the written report, and the evidence presented at the hearing, provides some evidence to indicate you committed the prohibited act.

(Doc. 7 at Ex. 9, p. 3).  As a result, the petitioner was sanctioned to 60 days of disciplinary segregation, 40 days loss of good conduct time, 365 days loss of visiting privileges, 365 days loss of commissary privileges, 365 days loss of telephone privileges, and 365 days visiting restriction.

The DHO offered the following reasons for imposing the sanctions:

> Use of drugs or illegal substances not only threatens the health, safety and welfare of staff, but inmates as well.  Inmates under the influence of illegal substances have been known to become violent; thereby, causing harm to themselves as well as others.  Use of drugs or illegal substances is a serious offense that could lead to disruption in a correctional setting.  The sanction of 60 days disciplinary segregation is imposed to punish you for your actions.  The sanction of disallowance of 40 days good conduct time is imposed as an immediate sanction to show you this type of offense is of a serious nature and merits serious sanctions.  The sanctions of loss of visiting privileges for 365 days, loss of commissary privileges for 365 days, loss of telephone privileges for 365 days, and visiting restriction for 365 days, are imposed to impress upon you the fact that you are expected to adhere to all the rules and regulations of the institution.  The sanction imposed involving the loss of visiting privileges was taken to enforce the standard of inmates being held responsible for their actions.  It is believed, and past evidence has supported, that drugs as well as drug paraphernalia is introduced into the inmate population through the inmate visiting room.  The DHO also believes that the loss of this privilege will have a more significant impact upon your future behavior.  In addition to the loss of visiting privileges, you received a sanction of visiting restriction, which is due to run consecutive to the loss of

> visiting privileges. During this time frame, you will only be allowed to receive visits from your immediate family members.

(Doc. 7 at Ex. 9, p. 4).

"The federal courts cannot assume the task of retrying all prison disciplinary disputes." *Smith v. Rabalais*, 659 F.2d 539, 545 (5th Cir. 1981). Instead, when reviewing claims involving prison disciplinary proceedings, a federal court is limited "to determin[ing] whether an inmate receive[d] the procedural protections provided by *Wolff [v. McDonnell*, 418 U.S. 539 (1974),] and whether 'some evidence' exists which supports the hearing officer's determination." *Young v. Jones*, 37 F.3d 1457, 1460 (11th Cir. 1994).

In *Wolff v. McDonnell*, the Supreme Court set forth the following minimum due process requirements to be accorded prisoners facing disciplinary proceedings that could result in the loss of a protected liberty interest such as good time credits: (1) "written notice of the charges must be given" to the inmate at least 24-hours in advance of the proceeding; (2) the inmate "should be allowed to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals;" and (3) the inmate must be given "a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." *Wolff*, 418 U.S. at 564-66.

The petitioner first claims that he was denied due process because his urine sample was inappropriately taken. The evidence refutes this claim. The petitioner signed the chain of custody form certifying that the specimen given was his. (Doc. 7 at Ex. 2). On March 24, 2005, the toxicology laboratory confirmed that the specimen matching the number on the petitioner's chain of custody form tested positive for Cannabinoids - THC Metabolite.

The petitioner next argues that the DHO officer did not allow him to interview or call witnesses during his DHO Hearing. Mack's signature on a document dated March 29, 2005, however, reflects that he did not wish to call witnesses at the hearing. (Doc. 7 at Ex. 6).

Additionally, the petitioner argues that he was not provided with supporting documentation and evidence prior to the hearing. However, the evidence indicates that the petitioner was afforded all the procedural safeguards mandated by *Wolff*. The petitioner received the incident report notifying him of the charges against him on March 24, 2005. On March 29, 2005, he was provided a UDC hearing. After the UDC hearing, the Committee referred the matter to the DHO and the petitioner received the Notice of Discipline Hearing and the Inmate Rights at Discipline Hearing forms. By these forms, the petitioner was notified of his rights to have a staff member present at the hearing, which he took advantage of, and to present witnesses and documentary evidence at the hearing. On April 11, 2005, more than 24 hours after the petitioner received the incident report, the DHO hearing occurred.

Lastly, the petitioner asserts that his administrative appeal was unfairly denied. The petitioner filed his first appeal on June 13, 2005. (Doc. 1 at Ex. 4). On June 24, 2005, the Regional Director of Regional Administrative Remedy Appeals responded to the petitioner that he found the DHO substantially complied with Bureau regulations, based the decision on the greater weight of the evidence, and imposed appropriate sanctions. (Doc. 1 at Ex. 5). Specifically, the Director found that:

> Review . . . reveals you provided a urine sample to staff in accordance with urine surveillance procedures. You signed the Chain of Custody for Drug Analysis form, certifying that you did provide the urine sample, that the specimen was sealed in your presence, and the information on the form and label were correct . . . . your urine specimen tested positive for Cannabinoids THC Metabolite. . . . you had not been prescribed any medication which would result in a positive test.

> There is no merit found in your allegation that staff did not follow the collection procedures . . . .  Second, you complain you requested a retest and staff failed to comply with your request.  Program Statement 6060.08, <u>Urine Surveillance and Narcotic Identification</u>, Page 7, states "Retesting at the inmate's request is not permitted."  You have presented no information to dispute the testing method.  Third, you contend the DHO failed to provide you with documents you requested.  Review of the discipline packet revealed you did not request any documents prior to or during the DHO proceedings.  However, the documents you reference were shared with you at your DHO hearing. . . .  Finally, you complain you were denied the right to witnesses.  You waived your right to witnesses and this is evidenced by your signature on the Notice of Discipline Hearing Before the DHO form.  We find the DHO outlined in detail the evidence she utilized to find you committed the prohibited act and the reasons she did not believe your defense.  We concur with the DHO's interpretation of the incident.
>
> Accordingly, your Regional Administrative Remedy is denied.  If dissatisfied with this response, you may appeal to the Office of General Counsel . . .

(Doc. 1 at Ex. 5).  The petitioner then filed an appeal with the Central Office for Administrative Remedy ("national appeal") in which he argued that:

> There is no evidence whatsoever that the officer who collected Mack's urine sample actually sealed the container (which allegedly contained Mack's urine) in Mack's presence, or that proper procedures were otherwise followed.  See Part B-Response.  Secondly, the Regional Office completely ignores the fact that Mack is not responsible for properly documenting his timely requests for documentary and other forms of evidence, which he made known to prison officials in his attempts to prepare a reasonable defense, but documentation of his requests was the sole responsible [sic] of those prison officials which were adequately named in Mack's initial appeal.  These named officials, however, were not contacted by the Regional Office.  Id.  Third, there is absolutely no evidence that the documents as referenced by Mack in his appeal were ever shared with Mack in advance of (at least 24-hours before) the challenged DHO Hearings, as improperly asserted by the Regional Office.  Id.

(Doc. 1 at Ex. 6).  All of this, he argues, made the entire disciplinary procedure in violation of his due process rights pursuant to *Wolff*.  (*Id.*).

7

In response, the national office found that the disciplinary proceedings were in substantial compliance with Program Statement 5270.07, Inmate Discipline and Special Housing Units and that the DHO's determination was reasonable. Specifically, the Administrator found that:

> Records indicate that on March 19, 2005, you provided a urine sample to staff and signed the Chain of Custody for Drug Analysis form, certifying the specimen was yours, that you provided it to the collector, the specimen was sealed in your presence, and the information on the form and label was correct.
>
> You claim your due process rights were violated because supporting documentation and evidence were not shared with you at least 24 hours before the DHO hearing. . . . If staff provide an inmate with all of [the *Wolff* requirements], an inmate's due process rights are considered met. Being provided supporting documentation and all evidence prior to the disciplinary hearing is not a due process right. Furthermore, the record reflects you did not raise any complaints of procedural errors during the DHO hearing. Upon review of the disciplinary record, we find you were afforded your due process rights, the required disciplinary procedures were substantially followed, the greater weight of the evidence supports the DHO's decision, and appropriate sanctions were imposed.

(Doc. 1 at Ex. 7).

In his traverse, Mack again argues that he was denied the requested documents and evidence and has been denied his requests for a retest of his urine or a DNA test of his hair, in violation of his due process rights. Furthermore, the petitioner argues that it is "wholly unreasonable to believe that [he], and not the UDC members, were responsible and required to properly document his requests for witnesses and other forms of evidence, as Respondent implies. Id. at Dkt. 7 at 7. See Dkt. 1 at 4-8." (Doc. 11 at p. 7). However, the court finds that Mack received the procedural protections provided by *Wolff*.[1] Although the petitioner maintains

---

[1] As stated previously, this court must uphold a disciplinary decision if "'some evidence' exists which supports the hearing officer's determination." Although the petitioner does not make the argument that the evidence was not sufficient to find him guilty of the infraction, the court notes that the evidence relied upon by the DHO in support of her finding that Mack committed the disciplinary infraction is sufficient to meet the "some evidence" standard.

The standard of proof required for a finding of guilt in prison disciplinary proceedings "is necessarily lower than that demanded in criminal parole-probation revocation, or civil proceedings." *Smith v. Rabalais*, 659 F.2d at 546. "[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board." *Superintendent v. Hill*, 472 U.S.

8

that he was not given documents he requested, any such withholding of documents would not be in violation of the petitioner's due process rights. The petitioner was given notice of the charges against him, he waived the opportunity to call witnesses, and he was given a written statement detailing the factfinders findings. Accordingly, the petitioner's claims are due to be dismissed.

## CONCLUSION

Premised on the foregoing, the petitioner's application for a writ of habeas corpus is due to be dismissed with prejudice. An appropriate order will be entered.

**DONE**, this 19th day of June, 2007.

          U.W. Clemon
          United States District Judge

---

445, 455 (1985).

> Th[e "some evidence"] standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced . . . ." Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, *the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board*. . . . Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact.

*Id*. at 455-56 (citations omitted) (emphasis added).